## Case No. 7,559.

### JUDD LINSEED AND SPERM OIL CO. v. The JAVA.

[Holmes, 15.] [1]

Circuit Court, D. Massachusetts. Sept., 1870. [2]

R. H. Dana, Jr., and L. S. Dabney, for appellants.

W. G. Russell, for claimants and appellees.

SHEPLEY, Circuit Judge. The libel in this case is brought by the owners of a cargo of linseed, which was shipped on the schooner James McCloskey, and damaged to the extent of about seven thousand dollars, in consequence of a collision in Boston harbor between the schooner and the steamship Java, of the Cunard Line.

Libellants claim that "the steamship caused the collision by not seasonably altering her course, and by not seasonably stopping and backing her machinery, and by her unusual and venturous navigation, or by one or more of said faults."

The claimants contend that a good lookout had been kept by the Java during the whole time she was coming up the harbor; that it was impossible for her to discover the schooner sooner than she was discovered, owing to the fact that the school-ship George M. Barnard was interposed between her and the schooner; that immediately upon discovering said schooner, the helm of the Java was put hard to starboard, and her engines were reversed at full speed, and that all that was possible to be done was done aboard the Java to avoid the collision; that at the time of the collision the speed of the steamer was so reduced as not to be equal to that of the schooner drifting with the tide. They also

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

[2] [Reversing Case No. 7,234. Decree of the circuit court reversed in 14 Wall. (81 U. S.) 189.]

contend that there was fault on the part of those in charge of the schooner, in allowing her to drift, without being under steerage-way, and without sail set, and concealed by the ship George M. Barnard, into the way of the steamship; and that if the schooner had been under sail so as to have answered her helm, she might, by putting her helm to starboard, even after the schooner was discovered by the steamship, have avoided the collision. The answer also claimed ·exemption of the steamship from liability by reason of her being an inward-bound ship, in sole charge of a pilot, taken on board under a compulsory statute of Massachusetts. This ground of defence was not relied upon in argument, it not being considered an open question in this circuit since the decision in Camp v. The Marcellus [Case No. 2,347].

The undisputed facts in the case are, that the schooner, between the hours of twelve noon and one of the afternoon of Nov. 7, 1866, was towed from one of the wharves in East Boston into the stream, and was getting under way near the school-ship George M. Barnard, having her foresail partly hoisted, when her master saw the Java coming round the stern of the George M. Barnard, heading directly towards the schooner. The schooner's helm was put hard a-starboard. The steamer was proceeding very slowly, having stopped her engines a short time before in order to avoid a collision · with another schooner which had passed down the harbor inside of the George M. Barnard and ahead of the James McCloskey. Immediately ·upon seeing the McCloskey, the helm of the Java was put hard to starboard and her engines were reversed; but the steamer struck the schooner abaft of the main rigging and knocked a hole in her, whereby the cargo of linseed was damaged. The weather was clear and fine, with a good breeze from a westerly direction. The tide was from one to two hours ebb, running from one and a half to two knots an hour. The Java, a propeller steamer of twenty-seven hundred tons burden, three hundred and sixty feet in length, drawing about nineteen feet of water, was coming up the harbor to her dock in East Boston. The McCloskey was a fore-and-aft schooner, one hundred and twenty-one feet long, proceeding down the harbor from her wharf at East Boston.

The school-ship is a large vessel, light and high out of the water, which, during the winter months, was kept constantly moored near the East Boston side of the channel, leaving a large space on the outside between her and Boston, and a comparatively narrow passage on the other side between her and East Boston. Vessels of the size of the Java rarely take this passage, because they could not pass inside of the school-ship, excepting at or near high water. But the evidence shows that, at the state of the tide at the time of the collision, it would be prudent and safe for a vessel of the size of the Java to go through that passage, if it was unobstructed by other vessels.

It is contended, on the part of the libellants, that the Java was in fault in coming up as she did to a point about midway of the channel, "about abreast the Slate Ledge," and "a little above the Slate Ledge buoy," before she determined whether to go inside or outside the school-ship, instead of keeping a course up the harbor more nearly parallel with that in which the school-ship was lying, so as to keep open the view of the channel inside the school-ship. But, as well stated by the learned judge of the district court in his opinion in this case, "whatever direction she had taken, the school-ship would have shut out some points of the compass, and there was no reason to apprehend danger from one point more than from another." ·

It is also contended that the Java pursued an unusual course in attempting to go to her dock by the passage between the school-ship and the Bird Island Flats. Much testimony has been taken in the case upon the frequency of the use of this passage by steamers of the class of the Java, and there is much conflict in the testimony. But it becomes comparatively immaterial in this case in the view we take of it, for two reasons: First. A vessel is not to be considered in fault merely because she takes, for reasons of her own convenience or necessity, an unusual course; but when there is a usual and an unusual course, the vessel taking the unusual course for her convenience does it at her peril, and is bound to see that she does it in safety. The Fyenoord. Swab. 374; The Peerless, Lush. 31; The Falkland, Browning & L. 204; The Roanoke (New York & V. S. S. Co. v. Calderwood) 19 How. [60 U. S.] 241. Secondly. The collision might and would have happened as it did had the school-ship been anchored in any other place, provided the relative positions of the three vessels in reference to each other had been the same.

It therefore seems properly to resolve itself into a consideration of the duties and liabilities of a steamship running under the stern of a vessel at anchor, at an acute angle, considered in reference to the possibilities and probablities of a small sailing-vessel passing at the same time behind the vessel at anchor, which was so large and high out of water as to intercept the view of a small schooner, tug-boat, or flat-boat, in a channel or passage much frequented by small vessels. It is urged that the steamer under these circumstances proceeded very slowly and with a vigilant lookout, and therefore, as the schooner was not seen from the steamer in season for those in charge of the steamer to avoid the schooner, the collision must be considered in the light of an inevitable accident. But is seems very difficult to apply the term "inevitable accident" to a collision occurring under such circumstances, at midday and in fine weather. The steamer was not disabled; and nothing happened which she was not

bound to anticipate as possible at least, if not probable. A collision is properly regarded as the result of inevitable accident, "which occurs when both parties have endeavored by every means in their power, with due care and caution and a proper display of nautical skill, to prevent its occurrence." Union S. S. Co. v. New York & V. S. S. Co., 24 How. [65 U. S.] 313. "If," says Dr. Lushington in The Plato v. The Perseverance, "the accident could have been avoided by ordinary skill, diligence, and precaution, then it is not an inevitable accident." There is always a period of time before the actual collision when it is inevitable,—when skill, diligence, and precaution are unavailing,—because too late. "Precautions," says Mr. Justice Clifford in the case of Wakefield v. The Governor [Case No. 17,049]; "must be seasonable in order to be effectual; and if they are not so, and a collision ensues in consequence of the delay, it is no defence to say that the necessity for precautionary measures was not perceived until it was too late to render them availing."

The school-ship for many years had been constantly, during the winter months, kept moored in the same position near the edge of the channel. She was large and high out of water. The pilot of the Java knew her position, and that the view of a small sailing-vessel might be shut out by the school-ship. The steamer was bound to guard against the emergency. If she went under the stern of the school-ship at an acute angle, under such circumstances she was bound by law to proceed so slowly and with so much vigilance that she could keep out of the way of a sailing vessel. Any degree of speed or any want of vigilance which left her powerless to prevent a collision with a sailing-vessel after it was seen, which she had a right to expect to meet in the position in which it was seen, was a want of seasonable and proper precaution, and therefore a fault.

It is said a man may drive round the corner of a road, if that is the most convenient way home, though he ought to do it slowly and with more than ordinary care if he cannot see what is on the other side. But suppose one man is driving round the corner of a road where the view is obscured by a high wall or building, and has reason to suppose that there may be coming round the corner in an opposite direction another who has a paramount right of way, who has a right and is under obligation to keep his course, while the first man is bound to keep out of his way. Would not this case better illustrate the relative positions of a vessel under steam and one under sail under such circumstances, and in each case would there not exist an obligation to see a clear course before proceeding?

Although, in the case of The Isaac Newton, 18 How. [59 U. S.] 581, the sails of the schooner were hoisted so as to have been visible over the hull of the vessel at anchor, and in that respect it is distinguishable from the present case, yet the decision was placed by the court on the ground that the attempt of the steamer to come to her landing between vessels at anchor, without first ascertaining that the track was clear, was culpable, and on that ground she was condemned in damages. If the night be too dark to distinguish a small vessel in season, a large steamship should not attempt to go down the harbor. The R. B. Forbes [Case No. 11,598]. It is not easy to see why the principle is not the same whether the view be intercepted by any large object at rest or obscured by darkness.

To hold the steamer free from fault under these circumstances would be to relax the rule well settled in the decisions of the courts of the United States, introducing conflict where there is now uniformity of decision, and establishing a precedent which might lead to danger. See The Oregon v. Rocca, 18 How. [59 U. S.] 570; St. John v. Paine, 10 How. [51 U. S.] 583; The Genesee Chief, 12 How. [53 U. S.] 461; New York & Liverpool U. S. M. S. Co. v. Rumball, 21 How. [62 U. S.] 372; The Carroll, 8 Wall. [75 U. S.] 302; The Rapid [Case No. 11,575]. The Java voluntarily and for her own allowable convenience placed herself in a position where, meeting a small vessel in a place not unusual, and where such a meeting might reasonably have been expected, she could do nothing by her machinery, her anchors, or her helm, to avoid the collision.

We do not perceive that any fault is fairly imputable to the schooner. She came from the dock without her sails being set, because they forced her against the wharf. She obtained the assistance of a tug to pull her out into the stream; and with the aid of the tug and the tide came down rapidly to the vicinity of the school-ship, and was setting her foresail, and had it from half to two-thirds up, when she saw the Java. There is no sufficient proof of any unusual or negligent delay in hoisting the sails, or of her being in fault in any other respect.

Decree of district court reversed. Decree to be entered for libellants. Case to be referred to a master to assess damages.